IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH HYNEMAN,<br>  Plaintiff,<br><br>  v.<br><br>HOLLYWOOD CASINO MORGANTOWN,<br>  Defendant. | :<br>:<br>:<br>:    Civil No. 5:24-cv-05280-JMG<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                 **August 8, 2025**

### I.     OVERVIEW

Beth Hyneman ("Plaintiff") brings this employment action against her former employer Hollywood Casino Morgantown ("Defendant") alleging claims of disability discrimination and retaliation under the American with Disabilities Act ("ADA"). Defendant moved for summary judgment on both of Plaintiff's claims. In the main, Defendant argues that it terminated Plaintiff for a legitimate, non-discriminatory reason, namely that Plaintiff accrued eighteen attendance points in excess of the ten-point threshold required for termination. Because Plaintiff has provided no evidence to the contrary, Defendant's motion is granted.

### II.    BACKGROUND

Plaintiff began her employment with Defendant as a Public Bartender. ECF No. 19-2 at ¶ 36. In this role, she was responsible for serving beverages directly to bar customers, tracking bar inventory, and maintaining awareness of guest alcohol intake. *Id.* Beyond these duties, an essential function of Plaintiff's position was regular attendance. *Id.* at ¶ 37.

To oversee attendance issues, Defendant maintains an attendance and punctuality policy. *Id.* at ¶ 11. Under this policy, Defendant follows an attendance point matrix for assessing

1

attendance points to employees. *Id*. at ¶ 12. If an employee accumulates ten points in a twelve-month period, then they may be terminated. *Id*. at ¶ 13. Employees, however, are not assessed attendance points during any period of approved leave. *Id*. at ¶ 14. Further, attendance points for an unexcused absence may be deducted from an employee's record if they provide a doctor's note. *Id*. at ¶ 42. In addition, the attendance policy permits attendance points within a one-year period to be removed from an employee's record. *Id*. at ¶ 13. While Plaintiff claims that all attendance points should automatically reset on an employee's work anniversary, ECF No. 19-1 at 10, Defendant contends that points are removed on the specific point's one-year anniversary instead. ECF No. 22 at 2. Plaintiff read and acknowledged the attendance policy when she started working for Defendant. ECF No. 19-2 at ¶ 15.

During her employment, Plaintiff suffered several injuries. On December 30, 2022, she sprained her right ankle when she rolled it walking through a door. *Id*. at ¶ 16. Plaintiff saw Dr. Brakken on January 2, 2023, who cleared her to return to work with restrictions the following day. *Id*. at ¶ 20. Defendant's Human Resources team confirmed in an email to Plaintiff that it had received her medical restriction paperwork and advised her to file an ADA accommodation claim with Sedgwick, the third-party provider responsible for handling Defendant's ADA and FMLA claims. *Id*. at ¶¶ 8, 23-24. Even though Plaintiff did not file an ADA claim, Defendant met all accommodations regarding her ankle. *Id*. at ¶¶ 25, 29. Moreover, pursuant to the attendance policy, Plaintiff was not assessed any points for absences related to her ankle injury from December 27, 2023, to January 11, 2024. *Id*. at ¶ 35.

In November 2023, Plaintiff began dealing with an injury to her back. *Id*. at ¶ 59. Defendant alleges that Plaintiff told her supervisor Ted Vazquez and Defendant's Human Resources Business Partner Joshua Dougherty that she had a medical issue but did not otherwise specify the type of

injury. *Id*. at ¶¶ 59, 62. However, Plaintiff claims that she gave the doctor's note discussing her medical issue to Mr. Vazquez, putting him on notice that she had a back injury. *Id*. at ¶ 62. The parties also dispute what happened after Plaintiff reported her medical issue. Although Defendant says that Mr. Dougherty encouraged Plaintiff to file an ADA or FMLA claim on at least three occasions, Plaintiff argues that another employee, Irma LNU, informed Plaintiff that she would take care of sending Plaintiff's paperwork to Sedgwick. *Id*. at ¶ 64. Further, Defendant contends that she sent emails to Mr. Dougherty and Natosha Keller on February 7, 2024, stating that she was "cancelling" her ADA. *Id*. at ¶¶ 65, 67. Plaintiff concedes that she wrote those emails but asserting that she did so at the direction of Mr. Vazquez. *Id*.

In addition to her medical issues, Plaintiff experienced problems with her attendance. On May 13, 2023, Plaintiff received a Written Warning for having eleven and a half attendance points. *Id*. at ¶¶ 46. By February 16, 2024, Plaintiff accumulated eighteen points, which was above the ten-point threshold for termination. *Id*. at ¶¶ 13, 75. So Defendant alleges that it fired her for violating the attendance policy on February 16, 2024. *Id*. at ¶ 76. Plaintiff, on the other hand, claims that Mr. Dougherty instructed her to send him all her doctor's notes and he would erase her points. *Id*. at ¶ 73. But, when she submitted the doctor's notes, she says that the attendance points remained on her record and were used to justify her termination. *Id*. at ¶¶ 75, 76.

On October 2, 2024, Plaintiff filed this employment action against Defendant. Her lawsuit is based on two claims under the ADA: (1) that Defendant fired her because of her disability and (2) that Defendant retaliated against her by firing her after she requested accommodations and took time off for her disability. Defendant moved for summary judgment in its favor on both claims. Plaintiff opposes summary judgment.

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. DISCUSSION

### a. Disability Discrimination

Plaintiff brings an ADA disability discrimination claim against Defendant in Count I of her Amended Complaint. Disability discrimination claims under the ADA are governed by the *McDonnell Douglas* burden-shifting framework. *See Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 (E.D. Pa. 2001) (holding that the *McDonnell Douglas* analysis applies to employment discrimination claims under the ADA).

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 880 (3d Cir. 2011). To demonstrate a *prima facie* case of disability discrimination, the plaintiff must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations . . . and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gardner v. SEPTA*, 824 F. App'x 100, 105-06 (3d Cir. 2020) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). If the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to "present a legitimate, non-discriminatory reason for the negative employment decision." *Law*, 159 F. Supp. 2d at 791. If defendant makes such a showing, the burden shifts back to plaintiff "to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Terrell v. Main Line Health, Inc.*, 320 F. Supp. 3d 644, 658 (E.D. Pa. 2018).

To establish pretext, "a plaintiff must identify evidence from which a reasonable jury could either: '(1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action.'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). A "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (internal quotation marks and citation omitted).

Here, Plaintiff argues that she was fired as a result of her disability because Defendant failed to engage in the interactive process, which prevented her from receiving a reasonable accommodation for her disability. This in turn caused her to accumulate attendance points that, according to Plaintiff, were used by Defendant as the basis for her termination. ECF No. 19-1 at 11. Defendant counters that the legitimate, non-discriminatory reason for Plaintiff's termination "was attendance violations and had nothing to do with discrimination." ECF No. 17 at 10. The Court does not address whether Plaintiff "has asserted a *prima facie* case of discrimination because, even assuming that she has, [Plaintiff] has failed to show that [Defendant's] articulated legitimate reason for firing her was pretextual. In other words, [Plaintiff] has failed to provide evidence that would allow a factfinder to disbelieve [Defendant's] non-discriminatory reason for firing her or to determine that discrimination was more likely than not a motivating or determinative cause of her termination." *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 198-99 (3d Cir. 2018) (internal quotation marks and citation omitted).

In essence, Plaintiff attempts to show pretext by saying that she "has offered evidence to explain why her accumulated attendance points should have been adjusted to a level that did not warrant termination." ECF No. 19-1 at 19. That evidence is Plaintiff's own deposition testimony that her points should have been reduced to nine once she sent her doctor's notes to Mr. Dougherty,

6

who promised her that he would "take care of erasing her points." *Id*. at 17. In addition, she testified that Mr. Dougherty instructed her not to report to work on February 6, 2024, and that the absence would not count against her. *Id*. at 17. Despite these assurances, Plaintiff reported that she sent Mr. Dougherty her doctor's notes and Defendant failed to correct her attendance record, which led to her termination in violation of the attendance policy. *Id*. at 17.

Turning to the record, however, the Court finds that the evidence clearly refutes Plaintiff's claim that the attendance points should have been reduced below the ten-point threshold for termination. Plaintiff's attendance record reveals that she had accumulated eighteen attendance points by February 15, 2024. ECF No. 19-6 at Exhibit N. Her argument that this total should have been reduced below ten is without merit. First, the doctor's notes she sent to Mr. Dougherty excused from work for the following dates: May 12, 2023; November 10, 2023, through November 13, 2023; December 26, 2023, through December 31, 2023; and January 3, 2024. ECF No. 19-6 at Exhibit E. Although Plaintiff alleges that Defendant failed to correct her attendance record in response to these emails, the record shows that Defendant had already credited her with excused absences on all those dates. ECF No. 19-6 at Exhibit N. After adjusting her attendance points accordingly, the total was eighteen. *Id*. Second, Plaintiff is correct that she received an attendance point for an unexcused absence on February 6, 2024. *Id*. Even assuming that this point should be deducted, however, her attendance points would only be reduced to seventeen, which is well above the ten-point termination threshold.

Plaintiff also attempts to establish pretext by arguing that all her attendance points should have been automatically reset on February 17, 2024, just one day after her termination. ECF No. 19-1 at 10. This claim is based on the theory that Defendant's attendance policy allows all attendance points to be erased on the day of an employee's "work anniversary." *Id*. But, as

7

Defendant points out, Plaintiff's argument misconstrues the policy. The attendance policy provides that points are removed on the specific point's one-year anniversary, not on an employee's work anniversary. ECF No. 16-6 at Exhibit D ("A team member's point total will be reduced ay the twelve (12)-month anniversary of an incident."). So the policy disproves Plaintiff's allegation that all of her attendance points should have been cleared from her attendance record on her work anniversary. Moreover, even if Plaintiff's points did reset on her work anniversary, she began her employment with Defendant on April 6, 2022, so February 17, 2024, would have no impact on her attendance points anyway. ECF No. 19-6 at Exhibit N. Because the record shows that Defendant properly corrected Plaintiff's attendance record and that her points would not have reset to zero on February 17, 2024, no reasonable jury could find that Plaintiff's attendance points should have been reduced to an amount that did not warrant her termination.

Thus, the Court concludes that Plaintiff has failed to show that Defendant's legitimate, non-discriminatory business reason was pretext for discrimination. Plaintiff's disability discrimination claim therefore does not survive summary judgment. *Hatch*, 755 F. App'x at 200.

### b. Retaliation

Plaintiff also brings an ADA retaliation claim in Count II of her Amended Complaint. The *McDonnell Douglas* burden-shifting framework applies to this claim as well. *See Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023).

By now, the framework is familiar. The plaintiff must first establish a *prima facie* case of retaliation. *Id*. at 433. "To establish a *prima facie* case for retaliation, the elements under the each statutory regime are 'essentially the same': [the plaintiff] 'must show that (1) [s]he engaged in a protected activity (such as taking FMLA qualifying leave, requesting a reasonable accommodation

8

under the ADA, or making a complaint regarding an activity prohibited by Title VII), (2) [s]he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision.'" *Id*. at 437-38 (citations omitted) (emphasis added). "Once [the plaintiff] makes out [her] *prima facie* case, the burden of production shifts to [the defendant] to offer a 'legitimate non-discriminatory [justification] for the adverse employment action.'" *Id*. at 433 (citations omitted) (emphasis added). "If [the defendant] does so, the third step in the framework shifts the burden of production back to [the plaintiff] to 'provide evidence from which a factfinder could reasonably infer that [the defendant's] proffered justification is merely a pretext for discrimination.'" *Id*. (citations omitted).

To make out a *prima facie* case of retaliation, "a plaintiff may rely on a broad array of evidence to demonstrate a causal link between his protected activity and the adverse action taken against him." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (internal quotation marks and citation omitted). A plaintiff "can meet this burden by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id*. (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Here, Plaintiff asserts that suffered a "pattern of antagonism or retaliatory animus" because Defendant failed to correct her attendance record and then fired her based on her points. ECF No. 19-1 at 8. This argument des not establish a causal link because, as discussed in the disability discrimination context, the record contradicts Plaintiff's claim by showing that Defendant had already discounted the absences that Plaintiff filed doctor's notes for. ECF No. 19-6 at Exhibit N.

9

Moreover, even if Plaintiff could establish a *prima facie* case of retaliation, the fact that her attendance points exceeded the ten-point threshold "prevents her from establishing pretext as well." *Remetz v. Lehigh Valley Hosp.*, 2024 WL 5047864, at *8 (E.D. Pa. Dec. 9, 2024).

As a result, Plaintiff's retaliation claim also fails at this stage.

V. **CONCLUSION**

"[T]he ADA does not preclude employers from disciplining or even discharging their employees for past misconduct." *Wolski v. City of Erie*, 773 F. Supp. 2d 577, 591 (W.D. Pa. 2011). Since the record establishes that Plaintiff's attendance points exceeded the ten-point termination threshold, Defendant was entitled to fire her. Thus, the motion for summary judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge